IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Abraham Colleton, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2:15-cv-2321-RMG-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Charleston Water System; Cliff Brown; | ) | |
| Allen Clum; Jim Meeks; and Dana | ) | |
| Ambrose, both personally and individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Abraham Colleton ("Colleton" or "Plaintiff"), brings this action against his former employer, Charleston Water System ("CWS"), and CWS employees Cliff Brown, Allen Clum, Jim Meeks, and Dana Ambrose ("Individual Defendants"). Against CWS, Plaintiff brings claims of discrimination and retaliation due to his race pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. He also brings state-law claims of defamation and negligent supervision, as well as a cause of action for "Discovery/Attorney's Fees, Suit Money, and Cost." Second Am. Compl., ECF No. 39 ("SAC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendants' Motion to Dismiss and Renewed Motion to Dismiss. ECF Nos. 28, 45. The court has considered Defendants' Motions and Memoranda; as well as Plaintiff's response to Defendant's original Motion to Dismiss, ECF No. 32, and Defendant CWS's Reply to that opposition, ECF No. 34. Having reviewed the parties' submissions and applicable law, the undersigned recommends Defendants' Motions be *granted*, dismissing all but the as-yet-unchallenged Title VII discrimination claim against CWS and dismissing all claims against all Individual Defendants.

I.	Background

Plaintiff was employed as a truck driver for CWS from June 2002 through January 15, 2015. SAC ¶¶ 6, 14, 30, 34. Plaintiff's SAC focuses principally on events of January 14 and 15, 2015 that culminated in his termination. *See* SAC ¶¶ 15-34. According to Plaintiff he was "forced into and subjected to a surprise[] meeting with Defendant Clum and Defendant Brown" at 6:00 a.m. on January 14, 2015. Plaintiff states Clum advised him not to stop at McDonald's for breakfast, at a truck stop, or at the "'rest area on break or go to the restroom [or] stop for any reason'" while operating a CWS truck. SAC ¶¶ 20-21 (quotation attributed to Clum). At around 10:30 a.m. that same day, Plaintiff stopped to use the restroom at a Hardee's, parking the truck in a "safe vacant parking lot." *Id.* ¶ 23. Plaintiff also made an "emergency restroom stop" at a rest area that was convenient and safe for trucks. *Id.* ¶ 25.

On January 15, 2015, Plaintiff states he was using the restroom from "11:33 a.m. to 11:49 a.m." when CWS plant secretary, Defendant Ambrose saw the CWS truck Plaintiff was driving parked at a rest stop and sent a photograph of it to Defendant Clum. Plaintiff avers Defendants Clum and Brown then picked up the CWS truck Plaintiff had been driving while Plaintiff was still using the restroom, leaving him stranded. *Id.* ¶¶ 26-29. Plaintiff avers Defendants Clum and Brown fired him during a telephone call prior to his 2:04 p.m. arrival at the CWS facility that same day. *Id.* ¶ 30. Upon arrival at the facility, Plaintiff met with Defendants Clum and Brown in a conference room, where he was "subjected to a hostile and retaliatory meeting," and Defendant Clum was "obnoxious and frightening" to Plaintiff, becoming "verbally violent and ma[king] multiple attempts in provoking the Plaintiff to become violent." *Id.* ¶¶ 30-32. Defendant Clum "again fired Plaintiff" and escorted him to his car without permitting him to collect his personal items." SAC ¶ 34.

After filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and receiving a "right to sue" letter from the EEOC, *see* ECF Nos. 28-2, 28-3, Plaintiff filed this action pro se, ECF No. 1. Shortly thereafter, counsel appeared on Plaintiff's behalf and, with leave of court, filed an Amended Complaint. ECF Nos. 22, 23, 26. CWS, the only Defendant at that time, filed responsive pleadings, including a Motion to Dismiss. ECF Nos. 28, 29. After briefing was completed as to that Motion to Dismiss, *see* ECF Nos. 32, 34, Plaintiff was permitted to file his SAC, which named the Individual Defendants, ECF No. 39. CWS and the Individual Defendants filed responsive pleadings to the SAC. ECF Nos. 45, 46. In their Renewed Motion to Dismiss Defendants seek dismissal of all claims against the Individual Defendants and reiterate the challenges to all claims against CWS other than the Title VII discrimination claim. ECF No. 45. Plaintiff filed no response to the Renewed Motion to Dismiss. To the extent they are responsive, the court will consider Plaintiff's arguments advanced against the initial Motion to Dismiss.

II.     Standard of review

Defendants move to dismiss Plaintiff's Title VII retaliation claim pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging the court lacks jurisdiction because Plaintiff failed to exhaust administrative remedies as to his retaliation claim.[1] A plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant challenges subject-matter jurisdiction pursuant to a Rule 12(b)(1) motion to dismiss, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (citing cases).

---

[1] Defendants do not seek dismissal of Plaintiff's Title VII discrimination claim at this time.

Defendants also seek Rule 12(b)(6) dismissal of all of Plaintiff's claims brought against the Individual Defendants and the claims of defamation, negligent supervision, and attorneys' fees brought against CWS. Fed. R. Civ. P. 12(b)(6). A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The court need not accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), or "legal conclusions drawn from the facts." *Monroe v. City of Charlottesville,* 579 F.3d 380, 385–86 (4th Cir. 2009) (internal quotation omitted).

Although the usual rule is that a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein," *Clatterbuck v. City of Charlottesville,*

4

708 F.3d 549, 557 (4th Cir. 2013), a court *may* properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *see also Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011).

III.   Analysis

    A.   Claims against all Individual Defendants

The SAC added Defendants Brown, Clum, Meeks, and Ambrose as Defendants, identifying them all as "Truck Driver[s] and employee[s], at the [CWS's] facility located in Charleston, South Carolina." *Id.* ¶¶ 7-10. The Caption of the SAC indicates the Individual Defendants are sued "Both Personally and Individually." Prior iterations of Plaintiff's Complaint identified Defendant Brown as Plaintiff's supervisor; Defendant Clum as the plant manager (Compl. ¶ 2); Defendant Ambrose as the plant secretary (Am. Compl. ¶ 21); and Defendant Meeks as having been present at a January 2015 meeting (Compl. ¶ 5).

Defendants move to dismiss the Individual Defendants from all claims. Renewed Mot. 3. Plaintiff filed no response to Defendant's Renewed Motion to Dismiss. The original Motion to Dismiss concerned the Amended Complaint, in which CWS was the sole Defendant. Accordingly, Plaintiff's response to the original Motion does not address this portion of Defendants' Renewed Motion in any manner. As Plaintiff has declined to challenge Defendants' argument concerning dismissal of all claims as to the Individual Defendants, he has abandoned all claims against them. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (citation omitted). Accordingly, it is recommended this portion of Defendants'

5

Renewed Motion be *granted* and Defendants Brown, Clum, Meeks, and Ambrose be dismissed from this matter.

    B. Claims against CWS

        1. Retaliation

Plaintiff's SAC contains two Title VII claims. Defendants do not challenge the first cause of action for "Race Discrimination in Violation of Title VII" at this time. They argue the second cause of action for "Retaliation in Violation of Title VII" should be dismissed for failure to exhaust administrative remedies. ECF No. 28-1.

Title VII prohibits an employer from retaliating against an employee for opposing unlawful discrimination or for participating in Title VII processes. 42 U.S.C. § 2000e–3(a). Before filing suit under Title VII, however, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 42 U.S.C. § 2000e–5(f)(1). Exhausting the administrative remedies is a statutory prerequisite to invoking the jurisdiction of this court. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.").

The Fourth Circuit Court of Appeals has considered the goals of Congress in enacting the Title VII exhaustion requirement. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). The court has explained that, rather than "a formality to be rushed through so that an individual can quickly file his subsequent lawsuit," Congress intended "the exhaustion requirement to serve the primary purposes of notice and conciliation." *Id.* By notifying an employer of the alleged discrimination through the EEOC charge, the employer may investigate and possibly resolve the alleged discriminatory actions on its own. *Id.* For these and other

6

reasons, "the administrative process is an integral part of the Title VII enforcement scheme." *Id.* Once a plaintiff files an administrative charge, that charge "plays a substantial role in focusing the formal litigation it precedes." *Chacko,* 429 F.3d at 509; *see also Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit.").

Plaintiff's Amended Charge is dated January 20, 2015, and is completed on an EEOC Form 5. ECF No. 28-2. The Form 5 Charge of Discrimination requires claimants to "Check appropriate box(es)" indicating the bases of their discrimination claims. The charge form contains "check boxes" for the following: race, color, sex, religion, national origin, retaliation, age, disability, genetic information, and other. The form also requires claimants to include the earliest and latest dates on which the complained-of discrimination took place. The claimant can also check a box for a "Continuing Action."

In his Amended Charge, Plaintiff checked the box indicating his charge of discrimination was based upon race and age. *Id.*[2] Plaintiff did not check the box indicating he suffered retaliation. He indicates the discrimination took place on January 15, 2015 at the "earliest" and "latest." He did not check the "continuing action" box. *Id.* The "particulars" section of the Amended Charge provides:

I.   I was hired in 2002, as a Truck Driver for the above-named employer. During my tenure, performed successfully and had no reprimands. During my employment, I have been asked about my age and when I would retire. On January 14, 2015, Mr. Clum (Caucasian), Plant Manager, and Cliff Brown (African-American), Supervisor, both in the Protected Age Group, held a meeting with me and the other truck drivers to discuss work policy. On January 15, 2015, I was discharged.
II.  Mr. Clum told me that I was discharged for leaving my truck unattended and violating the work process.
III. I believe that I have been discriminated against because of my race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as

---

[2] Plaintiff has not pursued an age-discrimination claim.

7

> amended, and because of my age (70) in violation of the Age Discrimination in Employment Act of 1967, as amended. I also believe that I have been discriminated against for being discharged in violation of Company Policy, by not being informed of such Policy, and thus not being allowed to appeal my discharge."

ECF No. 28-2.

Defendants argue Plaintiff's retaliation claim under Title VII should be dismissed. To determine whether a claim in an employment-based lawsuit is encompassed in the charge so as to be maintained in a subsequent Title VII lawsuit, a court may consider "[o]nly [1] those discrimination claims stated in the initial charge, [2] those reasonably related to the original complaint [of discrimination in the charge], and [3] those developed by reasonable investigation of the original complaint [of discrimination in the charge] . . . ." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir. 1976)). This inquiry attempts to strike a "balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 594 (4th Cir. 2012).

Here, it is undisputed that Plaintiff checked the box for disability in his Amended Charge and not the box for retaliation. Further, the narrative portion of the Amended Charge included no discussion of claimed retaliation. Thus, a claim for retaliation clearly was not "stated in the initial charge" so as to satisfy the first path to exhausting administrative remedies under *Evans.*

The court also considers the second option of Evans—whether Plaintiff's discrimination claim raised in the Amended Charge is "reasonably related" to a claim of retaliation. In considering whether retaliation claims can be found to be "reasonably related," the Fourth Circuit has carved out a separate rule for claims of retaliation that grow out of an earlier EEOC charge. *See Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir. 1992) (citations omitted). This rule recognizes that a plaintiff will be reluctant to report to the EEOC again after her employer has

taken action against her for filing the first charge. *Id.; see also Jones,* 551 F.3d at 299, 305 (finding that the plaintiff exhausted the administrative remedies by filing two separate EEOC charges and the second EEOC charge alleged ongoing behavior, stating that "I am being forced to work in a hostile environment and subject to differential treatment in retaliation for filing [the earlier EEOC charge]").

In his response, Plaintiff seizes on language from *Nealon* for the proposition that retaliation claims may always be raised for the first time in federal court. ECF No. 32 at 5-6. However, *Nealon* focuses only on the situation in which a plaintiff seeks Title VII retaliation relief based on the *filing of a prior EEOC charge.* 958 F.2d at 590. In *Nealon*, for example, the plaintiff filed a Title VII and Equal Pay Act charge with the EEOC. Nealon brought suit in federal court upon receiving her right-to-sue letter from the EEOC. In addition to the claims raised in the EEOC charge, Nealon, who remained employed by the same employer, also claimed her employer had discriminated against her for filing that charge. *Id.* at 591. The court found in that instance no purpose would be served by requiring Nealon to go through the charge process again.

Here, unlike in *Nealon*, Plaintiff does not allege retaliation for having filed an EEOC charge. In fact, it is unclear what Plaintiff's Title VII retaliation claim concerns. The SAC does little more than set out the general elements of a Title VII retaliation claim, asserting he "participated in the statutory complaint process" in opposing "discrimination under Title VII." SAC ¶¶ 42-46. The only "complaint process" of which the court is aware is Plaintiff's post-termination EEOC Charge—a Charge that indicates discrimination began and ended on his termination date. Further, the SAC includes no specific allegations of actions taken by CWS subsequent to termination. Similarly, nothing in the SAC sets out allegations of retaliatory

9

conduct that were "developed by reasonable investigation" of his Charge. *See Evans*, 80 F.3d. at 963. Plaintiff cannot satisfy that prong of *Evans*.

Having determined that Plaintiff's retaliation claim neither was listed in his EEOC Amended Charge nor falls within any recognized exceptions to listing it in the Charge, it is recommended that Plaintiff's Second Cause of Action be dismissed for lack of jurisdiction.

The undersigned notes the portion of Plaintiff's response to Defendant's original Motion to Dismiss the Title VII retaliation claim for failure to exhaust administrative remedies in which he apparently seeks to morph his Title VII Retaliation cause of action into a state-law claim of retaliatory discharge in violation of the public policy of South Carolina. ECF No. 32 at 3-5. South Carolina recognizes a cause of action for termination in violation of public policy. *See, e.g., Barron v. Labor Finders of S.C.,* 713 S.E.2d 634, 636 (S.C. 2011). However, Plaintiff's SAC contains no such cause of action or even language from which the court or Defendants conceivably could believe amounted to such a claim. Certainly nothing in the Second Cause of Action for Title VII Retaliation suggests such a claim. Further, when Plaintiff filed the opposition memorandum that discusses this state-law theory of retaliation in violation of public policy, the operative complaint was the First Amended Complaint. Although Plaintiff later was permitted to file a Second Amended Complaint, it does not contain such a cause of action either. No further consideration of this argument is required.[3]

    2. Defamation

Plaintiff's SAC bases his defamation claim on the following:

> 48. Defendant Clum was heard to have asked the Plaintiff "when are you going to retire" which resulted in the Plaintiff being stressed out and suffering from anxiety and you are an "incompetent nigga."

---

[3] Additionally, South Carolina's public-policy exception to at-will employment is strictly construed. *See Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385 (S.C. 2015).

10

> 50. [CWS] offered statements and actions which tended to impeach the honesty, integrity, and reputation of Plaintiff, thereby exposing him to public hatred, contempt, ridicule, and a tainted employment record, causing Plaintiff to not be able to find alternative employment.

SAC ¶¶ 48, 50. Earlier in the SAC, Plaintiff claims that, on the second day of his employment (in June 2002), "most of the plant managers" of CWS had asked Plaintiff when he was going to retire." *Id.* ¶ 18. Nowhere else in the SAC is a remark about Plaintiff's "being an incompetent nigga."[4] Nothing else in the SAC provides any factual backing for the nebulous reference to purportedly defamatory "statements and actions" in paragraph 50.

The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc.,* 506 S.E.2d 497, 501 (S.C. 1998). Under South Carolina law, a defamation plaintiff must show: 1) a false and defamatory statement was made; 2) the unprivileged statement was published to a third party; 3) the publisher was at fault; 4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002) (citing *Holtzscheiter*, 506 S.E.2d at 506).[5]

Defendants argue the 2002 question asking when Plaintiff planned to retire is not a "false or defamatory statement." ECF No. 28-1 at 4-5. In challenging CWS's Motion, Plaintiff looks to *Milkovich v. Lorained Journal Co*., 497 U.S. 1 (1990), seemingly arguing that the "opinion doctrine" should be considered to lend a "contextual anchor" to the retirement query. ECF No.

---

[4] The only other reference to the word "nigga" being used is found in the context of his Title VII race discrimination claim. *Id.* ¶ 40 ("Plaintiff was subjected to racial slurs such as 'nigga' during meetings with Defendant Clum and Defendant Brown.").

[5] Plaintiff cites a case from the Fourth Circuit Court of Appeals setting out the elements of defamation under Virginia law, which is inapplicable here. ECF No. 32 at 9 (citing *Choi v. Kyi Cul Lee*, 312 F. App'x 551, 552 (4th Cir. 2009)).

32 at 9. *Milkovich* considered federal constitutional issues involving media defendants—issues wholly irrelevant here.

The undersigned agrees with Defendant. In any alleged case of defamation, "[i]t is the trial court's function to determine initially whether a statement is susceptible of having a defamatory meaning." *Pierce v. Nw. Mut. Life Ins. Co.,* 444 F. Supp. 1098, 1101 (D.S.C. 1978). "The Court will not hunt for a forced and strained construction to put on ordinary words, but will construe them fairly, according to their natural and reasonable import, in the plain and popular sense in which the average reader naturally understands them." *Timmons v. The News & Press, Inc.,* 103 S.E.2d 277, 280-81 (S.C. 1958). Plaintiff has provided no cogent argument or any case law indicating a question about an individual's plans for retirement being susceptible of a defamatory meaning. The court's independent research has revealed no support for this theory. The undersigned finds the years-old retirement query is not subject to having a defamatory meaning. Dismissal as to this defamation allegation is appropriate.

Certainly, though, the statement tacked onto the end of paragraph 48—"you are an 'incompetent nigga'"—could have defamatory meaning. However, Plaintiff has not provided any detailed information to determine who made that statement, to whom, or when. In fact, paragraph 28 consists of one run-on sentence, averring Clum "was heard to have asked" Plaintiff the retirement query discussed above, indicating that query caused Plaintiff to be "stressed out and suffering from anxiety," and then, with no punctuation, concludes "and you are an 'incompetent nigga.'" SAC ¶ 48. The pleading requirements of Rule 8 require more clarity. *Twombley*, 550 U.S. at 569-70.

Even assuming, *arguendo*, Plaintiff's allegation that he was called an "incompetent nigga" is considered to have satisfied the first element—that a false and defamatory statement was made—the SAC contains no averment that even intimates there was an unprivileged

12

publication of any defamatory statements to any third party. Nowhere does Plaintiff set out any facts concerning to whom this allegation of incompetence was made. Dismissal is appropriate.

Plaintiff's only opposition to the dismissal of his defamation cause of action is focused on the first Amended Complaint, which did not reference the "incompetent nigga" phrase at all. In considering the publication issue as to that prior Complaint, Plaintiff submitted that, because no depositions had been taken prior to filing the Complaint, he had been unable to "identify all 'third parties' that heard Mr. Clum defame the Plaintiff" or determine other defamatory statements made about Plaintiff. ECF No. 32 at 10 (citing no legal authority).

The undersigned recommends dismissal because Plaintiff has not pleaded facts sufficient to demonstrate publication, which typically is to include allegations concerning the "'the time, place, content and listener of the alleged defamatory matter.'" *Campbell v. Int't Paper Co.,* CA 3:12–CV–03042–JFA, 2013 WL 1874850, at *3 (D.S.C. May 3, 2013) (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.,* CA 97–2397, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999)). In *Campbell,* the plaintiff alleged in his complaint that purportedly defamatory statements were made "publicly known" and that the defendants and "countless others" "published and republished them." 2013 WL 1874850, at *4. The court granted the defendants' Rule 12(b)(6) motion to dismiss based on his finding that the plaintiff offered only "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," *Twombly,* 550 U.S. at 555, rather than establishing the publication element of a defamation claim.

Similarly, here, Plaintiff has provided *no* information regarding any publication of allegedly defamatory statements. More is required. Plaintiff's blanket statement that he could not provide publication information because he had not yet been permitted discovery is insufficient to excuse this pleading deficiency. *Cf. Alford v. Wang, Inc.,* CA No. 9:13–1166–SB–BHH, 2014 WL 1314943 (D.S.C. Mar. 31, 2014). In *Alford,* the court denied defendant's Rule 12 motion as

13

to defamation claim when plaintiff had identified "employees" of defendant as those to whom publication of defamatory statements had been made. The court noted "employees of the defendant" was a finite group that could be considered further in discovery. *Id.* at *11. The court suggested a different result had plaintiff merely made "a blanketed accusation that a publication was simply somewhere made." *Id.*

Here, Plaintiff has, at best, pleaded blanket allegations of publication. Defendants' Rule 12(b)(6) challenge to Plaintiff's defamation cause of action should be granted.[6]

### 3. Negligent Supervision

Plaintiff also brings a state-law cause of action for Negligent Supervision, alleging CWS "knew or should have known of the necessity and opportunity for exercising control over the actions of Defendant Clum, Defendant Brown and Defendant Ambrose." SAC ¶ 58. Plaintiff also alleges Clum, Brown, and Ambrose were "employees of CWS at all times mentioned herein on the premises of [CWS.]" *Id.* ¶ 57. Finally, Plaintiff alleges:

> As a direct and proximate cause and result of Defendant [CWS'] action and inaction with regards to the disparate treatment suffered by Plaintiff at the hands of Defendant Clum, Defendant Brown, and Dana Ambrose, as well as [CWS'] willful, wanton, and reckless disregard for Plaintiff's rights in negligently hiring, training, and supervising it[]s employees, the Plaintiff is entitled to both actual and punitive damages.

SAC ¶ 59.

---

[6] Alternatively, in the event the district court finds Plaintiff has adequately pleaded publication as to the statement about incompetence, dismissal is appropriate to the extent Plaintiff suggests internal management discussions among members of CWS management team defamed him. *See* ECF No. 45-1 at 5. Such internal communications enjoy a qualified privilege under South Carolina law "if made in good faith and in the usual course of business." *Murray v. Holnam*, 542 S.E.2d 743, 749 (S.C. Ct. App. 2001). "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." *Murray*, 542 S.E.2d at 749.

CWS seeks Rule 12 dismissal of the negligent supervision claim, claiming Plaintiff has not sufficiently pleaded essential elements and that the claim is preempted under South Carolina workers' compensation law. ECF No. 28-1 at 6. The undersigned agrees with CWS.

South Carolina law provides that "an employer is under a duty in some circumstances to exercise reasonable care to control an employee acting outside the scope of his employment." *Degenhart v. Knights of Columbus,* 420 S.E.2d 495, 496 (S.C. 1992). The court set out these elements for establishing such a duty:

> An employer may be liable for negligent supervision if the employee intentionally harms another when he:
> (i) is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
> (ii) is using a chattel of [the employer], and . . . [the employer]
> (i) knows or has reason to know that he has the ability to control his [employee], and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

*Degenhart,* 420 S.E.2d at 496 (quoting Restatement (2d) of Torts § 317 (1965)). CWS submits Plaintiff cannot establish these elements.

In response, Plaintiff seems to argue he has adequately pleaded the negligent supervision claim by alleging CWS "owed him a duty to properly supervise its employees to ensure compliance with all necessary protocols, and asserts [] that Defendant recklessly and wantonly failed to train and supervise its employees." ECF No. 32 at 12. Plaintiff does not point to any factual allegations in support of this argument.

Nothing in Plaintiff's pleadings provides any indication that any CWS employee intentionally harmed Plaintiff. Furthermore, nothing in the SAC suggests CWS knew or should have known it had any reason to exercise control over Clum, Brown, or Ambrose. Further, the most Plaintiff has done is to provide a "formulaic recitation" of the elements of the tort of negligent supervision. This is insufficient. To show he is "entitled to relief," Plaintiff's

15

Complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

Further, Plaintiff has not pleaded facts indicating any bad conduct on the part of employees Clum, Brown, or Ambrose that would have placed CWS on notice that it needed to supervise them. *See Doe v. Octapharma Plasma, Inc.*, No. 3:15-CV-01302-JMC, 2015 WL 3467027, at *4 (D.S.C. June 2, 2015) (granting motion to dismiss negligent supervision claim when plaintiff had not pleaded allegations of prior actions of defendant's employee to put employer on notice of potential for further actions). "Employers have been held liable for negligent supervision when they were made aware of previous misconduct similar to the injury complained of in the present case and failed to take action against the offending employee." *Id. (citing Doe by Doe v. Greenville Hosp. Sys.,* 448 S.E.2d 564, 568 (S.C. Ct. App. 1994)).

CWS's Motion to Dismiss should be granted as to the negligent supervision claim. Furthermore, the undersigned agrees with CWS that this cause of action is preempted by the South Carolina Workers' Compensation Act. S.C Code § 42-1-10, *et seq. See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002) ("the Workers' Compensation Act . . . provides the exclusive remedy" for claims of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employees). Plaintiff does not challenge this ground in his responsive memorandum. Dismissal is appropriate.

    4.  "Discovery/Attorney's Fees, Suit Money, and Cost"

Finally, the undersigned agrees that Plaintiff's "Fi[f]th Cause of Action" for "Discovery/Attorney's Fees, Suit Money, and Cost," SAC ¶¶ 60-63, should be dismissed. Plaintiff's request for discovery is moot as a scheduling order has been issued. The request for attorneys' fees, "suit money and costs" should be dismissed as premature. While certain civil

rights statutes, including Title VII, permit an award of attorneys' fees to prevailing parties, any such award is premature at this juncture.

IV.     Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendant CWS's Motion to Dismiss, and the Renewed Motion to Dismiss filed by all Defendants, ECF Nos. 28, 45, be *granted*. If this recommendation is accepted, this matter will be ended as to Defendants Brown, Clum, Meeks, and Ambrose; the only remaining claim will be Plaintiff's First Cause of Action for Race Discrimination in Violation of Title VII as to Defendant CWS.

IT IS SO RECOMMENDED.

February 29, 2016                                            Kaymani D. West
Florence, South Carolina                                     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**