IN THE UNITED STATES DISTRICT COURT RECEIVED CLERK'S OFFICE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION                    2016 MAR 25   P 2: 18

| | | |
|---|---|---|
| Abraham Colleton, | ) | Civil Action No. 2:15-2321-RMG COURT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Charleston Water System, Cliff Brown, | ) | |
| Allen Clum, Jim Meeks, *and* Dana Ambrose ) | | |
| *both personally and individually,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate

Judge, recommending that the Court grant Defendant Charleston Water System's ("CWS") motion

to dismiss (Dkt. No. 28) and Defendants' motion to dismiss (Dkt. No. 45). For the below reasons,

the Court adopts the Report and Recommendation in part, denies Defendant CWS's motion to

dismiss (Dkt. No. 28) as moot, grants Defendants' motion to dismiss (Dkt. No. 45) in part and

denies it in part, dismisses Defendants Cliff Brown, Allan Clum (name misspelled as Allen in the

case caption), Jim Meeks, and Dana Ambrose from this action, and recommits this matter to the

Magistrate Judge for further proceedings.

## I.    **Background**

CWS employed Plaintiff Abraham Colleton as a truck driver from June 2002 to January

15, 2015. (R. & R. 2, Feb. 29, 2016, Dkt. No. 52.) Plaintiff alleges that on January 14, 2015,

Defendants Cliff Brown, Plaintiff's supervisor, Allan Clum, the CWS plant manager, instructed

him not to stop for any reason, including restroom breaks, while operating a CWS truck. (*Id.*) The

following day, Plaintiff "stopped for an emergency restroom stop . . . after defecating in his

underwear" at a Shell gasoline station when Defendant Dana Ambrose, the CWS plant secretary,

saw his truck parked at the station and sent a photograph of it to Mr. Clum. (2d Am. Compl. ¶¶ 24–29, Nov. 25, 2015, Dkt. No. 39.) Plaintiff avers that Mr. Clum and Mr. Brown then retrieved the CWS truck Plaintiff had been driving while he was still using the restroom, leaving him stranded, and that they fired him later that day. (*Id.* ¶ 30.) Plaintiff alleges that Mr. Clum and Mr. Brown often directed racial slurs at him, that the "no restroom stops" policy was enforced against him but not against white truck drivers, and that he was terminated in retaliation for participation in an activity protected under Title VII of the Civil Rights Act of 1964 ("Title VII"). (*Id.* ¶¶ 19, 38–42, 48.)

After filing a discrimination charge with the U.S Equal Employment Opportunity Commission ("EEOC") and receiving a "right to sue" letter, Plaintiff filed the present action *pro se*. (R. & R. 3.) Shortly thereafter, counsel for Plaintiff appeared and filed an amended complaint. (*Id.*) The amended complaint asserted two Title VII claims: race discrimination and retaliation. (*Id.*) It also asserted state-law claims of defamation and negligent supervision. (Am. Compl. ¶¶ 43–55.) CWS, the only Defendant at that time, filed responsive pleadings and a motion to dismiss all claims except for the claim of Title VII race discrimination.

After briefing completed on the motion to dismiss, Plaintiff filed a second amended complaint, which added the individual Defendants. (R. & R. 3.) It is unclear which causes of action are asserted against which individual Defendants, except that there appear to be no claims against Defendant Jim Meeks at all, who is never mentioned in the second amended complaint's factual allegations or asserted causes of action. (*See generally* 2d Am. Compl.) CWS and the individual Defendants filed responsive pleadings to the second amended complaint and a motion to dismiss. (*Id.*) Plaintiff filed no response to the second motion to dismiss. On February 29,

2016, the Magistrate Judge recommended that Defendants' motions for dismissal be granted. Plaintiff filed no objections to the Report and Recommendation.

## II.    Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Where the plaintiff fails to file any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge, *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the

complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    Analysis

Currently before the Court are two motions to dismiss: CWS's motion to dismiss the first amended complaint (Dkt. No. 28) and all Defendants' motion to dismiss the second amended complaint (Dkt. No. 45). Since the first amended complaint has been superseded by the second amended complaint, and since all arguments in the memorandum in support of CWS's motion to dismiss the first amended complaint are adopted by reference in the memorandum in support of Defendants' motion to dismiss the second amended complaint, the Court denies CWS's motion to dismiss the first amended complaint as moot. Defendants' motion to dismiss the second amended complaint, which includes arguments incorporated from CWS's motion to dismiss, is granted in part and denied in part as provided below.

### A.    Claims Against Individual Defendants

Plaintiff never responded to the motion to dismiss the second amended complaint, or to the Report and Recommendation recommending that the motion be granted. The Magistrate Judge

assumed that Plaintiff meant for his arguments in response to the motion to dismiss the first amended complaint to apply to the motion to dismiss the second amended complaint as to Defendant CWS (whose arguments were simply adopted by reference from previous motion). However, that response did not address any arguments specific to the individual Defendants, as they were not then parties to this action. Thus, Plaintiff has never responded to the individual Defendants. The Magistrate Judge recommends dismissal of the individual Defendants from this action because Plaintiff has declined to challenge their arguments in favor of dismissal. (R. & R. 5–6.) With a partial exception regarding the defamation claim against Mr. Clum, the Court agrees that the individual Defendants should be dismissed from this action.

Most of Plaintiff's claims against the individual Defendants are fatally defective on their face. Individual employees are not proper defendants for Title VII claims, *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998), or for a negligent supervision claim, see *Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992) (regarding employees acting outside the scope of their duties); Restatement (Second) of Agency § 213 (1958) (regarding employees acting within the scope of their duties). Only the defamation claim can plausibly name individual Defendants. Plaintiff alleges that he was defamed when Mr. Clum described him as an "incompetent nigga" and asked, "when are you going to retire."[1] (2d Am. Compl. ¶ 48.) "In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either

---

[1] The Court agrees with the Magistrate Judge's finding that the question "when are you going to retire" is not defamatory. (R. & R. 12.) Furthermore, the basis for a defamation claim against individual Defendants other than Mr. Clum is unclear; indeed, it is unclear if Plaintiff even asserts a defamation claim against the other individual Defendants. The Court's analysis of Plaintiff's defamation claim against the individual Defendants therefore focuses solely on Mr. Clum's alleged "incompetent nigga" statement.

actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Erickson v. Jones St. Publishers, L.L.C.*, 629 S.E.2d 653, 664 (S.C. 2006). Defendants deny that Mr. Clum made that statement. (Answer ¶ 50, Dec. 8, 2015, Dkt. No. 46.) But for purposes of a motion to dismiss, the Court assumes the truth of the allegation and in moving for dismissal Defendants argue that the defamatory comments complained of would be protected by a qualified privilege because they concerned Plaintiff's job performance and occurred between a manager and a supervisor "in good faith and in the usual course of business." (Mem. Mot. Dismiss 5, Dec. 8, 2015, Dkt. 45-1 (quoting *Murray v. Holman*, 542 S.E.2d 743, 749 (S.C. Ct. App. 2001)).) "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." *Murray*, 542 S.E.2d at 749.

Defendants' claim of privilege goes to the publication element—"unprivileged publication"—and to actionability element. The alleged statement "incompetent nigga" is defamatory *per se*—but that only means no extrinsic evidence is required to prove the defamatory nature of the statement. *See Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501 (S.C. 1998). Statements are not actionable *per se* simply because they are defamatory *per se*. In South Carolina, slander (Plaintiff does not allege written publication[2]) is actionable *per se* "only if it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime

---

[2] The analysis would be different if Defendants were alleged to have published "incompetent nigga" in writing: "Under the common law, [l]ibel is actionable per se if it involves written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous. Essentially, all libel is actionable *per se*, while only certain categories of slander are actionable *per se*." *Erickson*, 629 S.E.2d at 664.

of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Id.* at 502. Plaintiff alleges that the statement charges "unfitness in one's business or profession" and therefore is actionable *per se*. Certainly, it does charge that, but Defendants counter that, as Plaintiff's supervisors, they enjoyed a qualified privilege to discuss Plaintiff's professional fitness. Plaintiff must overcome the claim of qualified privilege to show an actionable "special harm caused by the publication." *Erickson*, 629 S.E.2d at 664.

It is easy to see an argument that the statement "incompetent nigga" lacks the requisite good faith for a claim of qualified privilege. It is also possible that, despite the odious racial slur, "incompetent"—the only word purporting to refer to Plaintiff's professional fitness—was used in good faith. The claim of qualified privilege is therefore at least colorable, and Plaintiff does not make the question of good faith a disputed question by standing mute when Defendants raise a colorable claim of qualified privilege.

However, "[a] qualified privilege does not prevent liability for defamation where the statement is made with actual malice." *Murray*, 542 S.E.2d at 750. Actual malice must be proven, not assumed: "even if the slander is [otherwise] actionable *per se*, if the communication is privileged, the plaintiff must prove actual malice." *Id.* "[A]ctual malice means the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." *Id.* "The time, place, and other circumstances of the preparation and publication of defamatory charges, as well as the language of the publication itself, are admissible evidence to show that the false charge was made with malice." *Fulton v. Atl. Coast Line R.R.*, 67 S.E.2d 425, 429 (S.C. 1951)

-7-

Here, the allegation that Mr. Clum described Plaintiff as an "incompetent nigga," if taken as true and if all reasonable inferences from that alleged statement are drawn in Plaintiff's favor, is sufficient to show actual malice. If actual malice is present, Defendants' asserted qualified privilege is unavailing. Although Plaintiff failed to oppose Defendants' motion as to Mr. Clum, as movants Defendants nonetheless bear the burden of demonstrating that the second amended complaint states a claim for relief for defamation. Defendants' qualified immunity argument is insufficient to meet that burden.

Defendants also argue that Plaintiff's defamation allegation regarding Mr. Clum is insufficient because it includes no allegation of time or place. Plaintiff merely alleges that Mr. Clum "was heard" when he stated that Plaintiff was an "incompetent nigga." If all reasonable inferences are drawn in favor of the non-moving party, it appears that this statement occurred in the workplace, and was overheard by one or more CWS employees.[3] But that is still insufficient for notice pleading. *See* Fed. R. Civ. P. 8, 9(f); *Twombley*, 550 U.S. at 569–70. Defendants cannot be expected to defend against an allegation that Mr. Clum defamed Plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time. *See, e.g., Campbell v. Int'l Paper Co.*, Civ. No. 3:12-3042-JFA, 2013 WL 1874850, at *4 (D.S.C. May 3, 2013) (finding a pleading insufficient regarding the element of publication to a third party because "[n]owhere in the complaint is it alleged to whom the defendants made the statements at issue."). Therefore, the Court dismisses the defamation claim against Mr. Clum without prejudice and with leave to amend the complaint to re-allege the claim. *Cf. Campbell*, 2013 WL 18744850, at *8 (dismissing

---

[3] The Court disagrees with the Magistrate Judge's finding that the second amended complaint "contains no averment that even intimates there was an unprivileged publication of any defamatory statements to any third party." (R. & R. 12–13.) The allegation that Mr. Clum was "heard" when stating that Plaintiff is an "incompetent nigga," fairly construed, at least intimates publication of a defamatory statement.

-8-

defamation claim that was inadequately pled because it lacked details about when, where, and to whom the defamatory statements were published, without prejudice and with leave to re-allege the cause of action). Plaintiff is not entitled to wait until after discovery before pleading his causes of action properly, despite his assertion to the contrary. (*See* Resp. Mot. Dismiss 10–11, Sept. 14, 2015, Dkt. No. 32.) The Court therefore sets a short, three-week deadline for re-alleging the defamation claim.

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to all claims against all individual Defendants. Plaintiff has leave to amend the second amended complaint, within 21 days of the entry of this Order, to add a defamation claim against Mr. Clum pled with appropriate specificity.

### B.    Claims Against CWS

Defendants also move for dismissal of all claims against CWS except Plaintiff's Title VII racial discrimination claim. The Magistrate Judge recommends granting Defendants' motion. The Court agrees, except that, for the reasons given below, the Court grants leave for Plaintiff to re-allege certain causes of action against CWS.

#### 1.    Title VII Retaliation Claim

Plaintiff brings a Title VII retaliation claim against CWS. Title VII, section 704, prohibits an employer from retaliating against an employee for opposing unlawful discrimination or for participating in Title VII processes. "In order to establish a prima facie Title VII retaliation claim, a plaintiff must demonstrate three elements: (1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (internal quotation marks omitted). An employee engages in a "protected activity" when he opposes employment actions that are actually unlawful under Title VII or that he reasonably

believes are unlawful. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc). The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities" and noting that "even non-verbal conduct may constitute protected activity." *DeMasters*, 796 F.3d at 417 (internal quotation marks omitted). In this Circuit, "the threshold for oppositional conduct is not onerous." *Id.*

Before filing a Title VII action, however, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smtih v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Exhaustion of administrative remedies is a jurisdictional prerequisite to a Title VII action. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2000). In considering whether a Title VII claim can be maintained in a subsequent lawsuit, the Court may consider "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

The Magistrate Judge recommends dismissing Plaintiff's retaliation claim against CWS for lack of subject-matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. The Court agrees. Plaintiff's EEOC Charge of Discrimination form has boxes checked for race and age discrimination, but not retaliation. (Dkt. No. 28-2.) His narrative of the particulars of his charge makes no claim of retaliation. (*Id.*) Plaintiff alleges that his termination was because of his race and his age, not because of anything he did. Retaliation is not a discrimination claim "stated in [his] initial charge."

-10-

The Magistrate Judge also considered whether Plaintiff's retaliation claim is "reasonably related" to his initial EEOC charge.[4] Plaintiff claims *Nealon v. Stone* holds that an employee who exhausts administrative remedies regarding discrimination claims need not exhaust remedies regarding retaliation. (Resp. 5–6 (citing 958 F.3d 584 (4th Cir. 1992)).) But that is incorrect. *Nealon* holds that an employee who files an EEOC charge and then files a Title VII action is not required to file a second EEOC charge to allege in the Title VII action that the employer terminated the employee in retaliation for filing the first EEOC charge. 958 F.3d at 590. Plaintiff was terminated before his EEOC charge, and he alleges no post-termination conduct in retaliation for his filing of an EEOC charge. *Nealon* is inapposite.

Plaintiff's retaliation claim can be "related" to his EEOC charge only if one accepts the proposition that he was terminated in "retaliation" for his age and race. But a retaliation claim requires protected conduct, not membership in a protected group. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013). No plausible construction of Plaintiff's EEOC charge is so expansive as to include his retaliation claim. The Court therefore lacks subject matter jurisdiction over his Title VII retaliation claim against CWS.

### 2. Defamation Claim

Plaintiff's defamation claim against CWS is identical to his claim against Mr. Clum. *See* Section III.A., *supra.* The only additional issue is whether CWS is liable for alleged defamation by its agent, Mr. Clum. Under South Carolina law, an employer is vicariously liable for any defamatory statements made by an agent acting within the scope of his employment. *Murray*, 542 S.E.2d at 748. Although Defendants deny that Mr. Clum made any such statement, in claiming

---

[4] As the Magistrate Judge observed, Plaintiff does not allege that he failed to include his retaliation claim in his EEOC charge because it was "developed by reasonable investigation" of that charge.

qualified privilege they appear to concede that, if the statement was made, it was made within the scope of Mr. Clum's employment as plant manager. Therefore, for the reasons given above regarding the defamation claim against Mr. Clum, the Court dismisses Plaintiff's defamation claim against CWS without prejudice and with leave to amend the second amended complaint to re-allege a defamation cause of action against CWS within 21 days of the entry of this order.

### 3.    Negligent Supervision Claim

The Report and Recommendation looks to the wrong standard for Plaintiff's negligent supervision claim. The negligent supervision elements quoted therein (at R. & R. 15) are from the Restatement (Second) of Torts § 317 (Duty of Master to Control Conduct of Servant), and apply only when employees act outside the scope of their employment. Restatement (Second) of Torts § 317 & cmt. a. (1965). As noted above, there is no apparent dispute that CWS's employees were acting within the scope of their employment at all times relevant to this action.[5] The Court therefore declines to adopt the Report and Recommendation regarding Plaintiff's negligent supervision claim and addresses Defendants' motion to dismiss it *de novo*.

The standard applicable to Plaintiff's claim is

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders of in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

---

[5] Plaintiff's response to CWS's motion to dismiss emphasizes "outside" in stating, "the Supreme Court of South Carolina adopted the tort of negligent supervision for an employee acting *outside* the scope of his employment," (Resp. 12), but Plaintiff's argument is too incoherent to understand. And it seems inarguable that conduct occurring during working hours at the workplace by a supervising employee toward a subordinate employee is within the scope of the supervisor's employment. Defendants concede the point by arguing for qualified immunity for their actions.

-12-

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (Principal Negligent or Reckless) (1958); *see also Doe v. AE Outfitters Retail Co.*, No. WDQ-14-508, 2015 WL 9255325, at *12 (D. Md. Dec. 17, 2015) ("[A]s an alternate theory of liability for negligent supervision . . . [u]nder § 213, an employer conducting an activity through servants or other agents may be liable for negligent supervision of the activity when employees are acting *within* the scope of their employment." (emphasis in original and internal quotation marks omitted)). The Court finds no South Carolina case adopting or declining to adopt this particular section of the Restatement (Second) of Agency. However, in answering a question certified from this Court, the South Carolina Supreme Court stated that a cause of action for negligence may be maintained directly against an employer for employee conduct that was the scope of the employee's duties, even if the employer concedes derivative liability under *respondeat superior*. *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 331 (S.C. 2008). The South Carolina Supreme Court also noted that its case law on negligent supervision has not reached the distinction between acts within and outside the scope of employment. *Id.* at 331 n.1.

As the South Carolina Supreme Court stated, liability for negligent supervision is not *respondeat superior* liability for an employee's conduct. *See also* Restatement (Second) of Agency § 213 cmt. a. ("The rule stated in this Section is not based upon any rule of the law of principal and agent or of master and servant. It is a special application of the general rules stated in the Restatement of Torts . . . ."). It is independent negligent conduct by the employer and so "[l]iability exists only if all the requirements of an action of tort for negligence exist." *Id.* Section 213 applies to the liability "of the master to his servants, the master being subject to liability to

them for his own negligence, even though the act immediately causing the harm is that of a fellow servant for whose negligence to them the master is not liable." *Id.* cmt. b.

An archetypical claim of negligent supervision by an employee against his employer would be a worker injured by a co-worker's negligence. *See, e.g., Norfolk & W.R. Co. v. Hoover*, 29 A. 994, 995 (Md. 1894) ("[T]he master . . . owes to each of his servants the duty of using reasonable care and caution in the selection of competent fellow servants, and in the retention in his service of none but those who are. If he does not perform this duty, and an injury is occasioned by the negligence of an incompetent or careless servant, the master is responsible to the injured employé, not for the mere negligent act or omission of the incompetent or careless servant, but for his own negligence in not discharging his own duty towards the injured servant."). In that respect, the common law tort largely has been preempted by workers' compensation laws. However, the majority position is that a negligent supervision claim does not require physical harm. *See, e.g., Verhelst v. Michael D's Rest. San Antonio, Inc.*, 154 F. Supp. 2d 959, 968 (W.D. Tex. 2001) ("[A] cause of action for negligent supervision and training requires that the employee in question commit an actionable tort, causing a legally compensable injury—not necessarily a physical injury." (internal quotation marks omitted)); *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001) (considering negligent supervision for conduct within the scope of employment under the Restatement (Second) of Agency § 213); *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1223–24 (W.D. Tenn.1993) (considering negligent supervision for conduct outside the scope of employment under the Restatement (Second) of Torts § 317); *Kiesau v. Bantz*, 686 N.W.2d 164, 172–73 (Iowa 2004) (reversing prior holding that physical harm is required because § "213 of the Restatement (Second) of Agency reveals no requirement that an injured party must sustain physical injury to recover under a claim of negligent hiring, supervision, or retention"); *but see also, e.g.,*

-14-

*Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996) (Minnesota requires physical harm or threat of physical harm for negligent supervision claims "under both the Restatement (Second) of Agency § 213 and the Restatement (Second) of Torts § 317."). Because physical harm likely is not required to state a claim for negligent supervision, the Court does not agree with the Magistrate Judge's finding that the South Carolina workers' compensation law's exclusivity provision, S.C. Code § 42-1-540, necessarily preempts Plaintiff's negligent supervision claim. (R. & R. 16.) South Carolina's worker compensation law preempts claims regarding workplace physical injury, including physical injury resulting from negligent supervision. *See Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993). It also preempts emotional distress resulting from workplace physical injury, *see id.*, and workplace intentional infliction of emotional distress, *see Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538, 540 (S.C. 1992). But it does not preempt workplace defamation claims. *Loges*, 417 S.E.2d at 540 ("Thus, to the extent [plaintiff] alleges [defendant's] negligence was the proximate cause of injury arising from the slanderous conduct of [defendant's employee], [plaintiff's] claim is not barred by the Act."). South Carolina's position accords with the positions of most other states. *See, e.g., Snead v. Harbaugh*, 404 S.E.2d 53, 56 (Va. 1991) (collecting cases) ("The more prevalent view, in those jurisdictions which include intentional torts within the meaning of 'accident' for the purpose of workers' compensation, excludes injury to reputation from the penumbra of 'injury' for workers' compensation purposes.")

Plaintiff, however, also looks to the wrong standard for a negligent supervision claim, and so fails even to attempt to state a claim under the standard applicable for negligent supervision of activities within the scope of employment. Plaintiff alleges that the offending CWS employees were on the premises of CWS at all relevant times, that CWS had the ability to control them, and

-15-

that CWS should have known of the necessity of exercising such control. (2d Am. Compl. ¶¶ 56–58.) As the Magistrate Judge noted, that is a "formulaic recitation of the elements of a cause of action" for negligent supervision of activities outside the scope of employment, as given in the Restatement (Second) of Torts. (R. & R. 15–16.) Rather than imaging how Plaintiff's allegations might state a claim for negligent supervision of activities within the scope of employment, as given in the Restatement (Second) of Agency, the Court instead dismisses his negligent supervision claim without prejudice and with leave to amend the second amended complaint to re-allege a tort of negligent supervision within 21 days of the entry of this Order.

## C.    Claim for Attorney's Fees

Plaintiff, in a fifth cause of action, seeks discovery, attorney's fees, and costs. (2d Am. Compl. ¶¶ 61-64.) Discovery is not a form of relief. The Court agrees with the Magistrate Judge's recommendation that any request for fees or costs is premature. Title VII allows an award of attorney's fees, but a request for an award of fees is not a separate cause of action, and Plaintiff additionally asks for fees and costs in his prayer for relief. The Court therefore dismisses the fifth cause of action.

## IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS** Section III.B.1, pages 6–10, of the Report and Recommendation (Dkt. No. 52) as the Order of the Court, as further supplemented by this Order; **DENIES AS MOOT** Defendant CWS's motion to dismiss (Dkt. No. 28); and **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss (Dkt. No. 45). The Court **DISMISSES** Defendants Allan Clum, Cliff Brown, Jim Meeks, and Dana Ambrose from this action; **DISMISSES FOR LACK OF JURISDICTION** the Second Cause of Action in the Second Amended Complaint; **DISMISSES WITHOUT PREJUDICE** the Third Cause of Action in the Second Amended Complaint, with leave to amend to re-allege this cause of action as to

-16-

Defendants Charleston Water System and Allan Clum, within 21 days of the entry of this Order; **DISMISSES WITHOUT PREJUDICE** the Fourth Cause of Action in the Second Amended Complaint, with leave to amend to re-allege this cause of action as to Defendant Charleston Water System, within 21 days of the entry of this Order; **DISMISSES WITH PREJUDICE** the Fifth Cause of Action in the Second Amended Complaint; and **RECOMMITS** this matter to the Magistrate Judge for further proceedings.

   **AND IT IS SO ORDERED.**

                                          _____
                                          Richard Mark Gergel
                                          United States District Court Judge

March 25, 2016
Charleston, South Carolina